IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 23-cv-01076-PAB-NRN

ROCKY MOUNTAIN GUN OWNERS, and
ALICIA GARCIA,

    Plaintiffs,

v.

JARED S. POLIS, in his official capacity as Governor of the State of Colorado,

    Defendant.

---

# ORDER
---

This matter comes before the Court on the Motion for Preliminary Injunction [Docket No. 10] of plaintiffs Rocky Mountain Gun Owners ("RMGO") and Alicia Garcia. Defendant Jared S. Polis, in his capacity as the Governor of the State of Colorado, filed a response opposing plaintiffs' motion. Docket No. 18. Plaintiffs filed a reply. Docket No. 23. The Court has jurisdiction under 28 U.S.C. § 1331.

## I. BACKGROUND

RMGO is a nonprofit organization that seeks to defend the right of all law-abiding individuals to keep and bear arms. Docket No. 10-1 at 1, ¶ 3. Members of RMGO intend and desire to purchase firearms for lawful purposes including home self-defense. *Id.*, ¶ 4. Alicia Garcia is an adult citizen of Colorado. Docket No. 10-2 at 1, ¶ 2. She intends and desires to purchase a firearm for lawful purposes including self-defense in her home. *Id*. There is no indication that Ms. Garcia is a member of RMGO or has any connection to RMGO.

On April 28, 2023, Governor Polis signed House Bill 23-1219 ("HB23-1219"). Docket No. 1 at 1. HB23-1219 will become effective on October 1, 2023. Docket No. 1-1 at 4.

HB23-1219 is codified as Section 18-12-115 of the Colorado Revised Statutes. Section 18-12-115(1)(a) creates a waiting period for the purchase of firearms:

> It is unlawful for any person who sells a firearm, including a licensed gun dealer as defined in Section 18-12-506(6),[1] to deliver the firearm to the purchaser until the later in time occurs:
>
> (I) Three days after a licensed gun dealer has initiated a background check of the purchaser that is required pursuant to state or federal law; or
>
> (II) The seller has obtained approval for the firearm transfer from the bureau[2] after it has completed any background check required by state or federal law.

Docket No. 1-1 at 3 (footnotes added). Section 18-12-115 makes exceptions to the waiting period for the sale of an antique firearm, sale of a firearm by a person serving in the armed forces of the United States to a family member, and any firearm transfer for which a background check is not required by law. *Id.* at 3-4.

On April 28, 2023, plaintiffs filed this action under the Second and Fourteenth Amendments based on their allegations that HB23-1219 violates the rights of the people of Colorado, including plaintiffs, under the Second Amendment. Docket No. 1 at 6, ¶ 16. On June 7, 2023, plaintiffs filed a motion seeking to enjoin the enforcement of HB23-1219. Docket No. 10.

---

[1] A "licensed gun dealer" means "any person who is a licensed importer, licensed manufacturer, or dealer licensed pursuant to 18 U.S.C. sec. 923, as amended, as a federally licensed firearms dealer." Colo. Rev. Stat. § 18-12-506(6).

[2] The "bureau" is the Colorado Bureau of Investigation. Colo. Rev. Stat. § 18-12-101(1)(b.5).

2

## II. LEGAL STANDARD

To obtain a preliminary injunction, "the moving party must demonstrate four factors: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009).

## III. ANALYSIS

Plaintiffs seek to enjoin enforcement of HB23-1219 as unconstitutional. Docket No. 10 at 8. Governor Polis opposes plaintiffs' motion. Docket No. 18 at 1-2. Governor Polis does not challenge plaintiffs' standing in response to their motion for a preliminary injunction, but "reserves the right to challenge" whether a delay in acquiring a firearm "constitutes an injury-in-fact for purposes of Article III standing." *Id.* at 14 n.4. Plaintiffs do not address their own standing to seek injunctive relief; both parties only address the alleged injuries plaintiffs face as part of the discussion of the merits of plaintiffs' claim. *See* Docket No. 18 at 13-14; Docket No. 23 at 13-14. However, "a federal court can't 'assume' a plaintiff has demonstrated Article III standing in order to proceed to the merits of the underlying claim, regardless of the claim's significance." *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 543 (10th Cir. 2016) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). Therefore, the Court will begin by examining plaintiffs' standing to seek injunctive relief.

### A. Legal Standard Regarding Standing

"[A] court must raise the standing issue sua sponte, if necessary, in order to determine if it has jurisdiction." *Russell v. Fin. Cap. Equities*, 158 F. App'x 953, 955

3

(10th Cir. 2005) (unpublished) (quoting *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1166 (10th Cir. 1996)). "A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005) (citation omitted). It is well established that "[t]he party invoking federal jurisdiction bears the burden of establishing such jurisdiction as a threshold matter." *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004).

To establish Article III standing, a plaintiff must allege "that (1) he or she has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision." *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003) (quoting *Phelps v. Hamilton*, 122 F.3d 1309, 1326 (10th Cir. 1997)). In order to show the first element of standing, a plaintiff must show she has "suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations and citations omitted); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) ("Injury in fact is a constitutional requirement."). An injury is particularized if it affects the plaintiff in "a personal and individual way." *Id*. (citation omitted). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist;" it must be "real," not "abstract." *Id*. at 340. Furthermore, "[a] federal court's jurisdiction . . . can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury.'" *Warth v. Seldin,* 422 U.S. 490, 499 (1975) (quoting *Linda R.S. v. Richard D.,* 410 U.S. 614, 617 (1973)).

"[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). Each plaintiff must have standing to seek each form of relief in each claim. *Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007). Where, as here, a plaintiff seeks prospective relief such as an injunction, "the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004). "The threatened injury must be certainly impending and not merely speculative." *Id.* (quotations and citation omitted).

In some narrow circumstances, a plaintiff may seek pre-enforcement review of a law she fears may be enforced against her in the future. *See, e.g.*, *Bronson*, 500 F.3d at 1108-09. Consistent with the usual standing requirements described above, courts have held that, for a threat of enforcement to be sufficient for Article III injury, a plaintiff must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

### B.  RMGO Standing

An organization has standing to sue on its own to challenge action that causes it direct injury, and the inquiry is "the same inquiry as in the case of an individual." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378 (1982). Organizations may assert standing in their own right when, for instance, a defendant's conduct makes it difficult or impossible for the organization to fulfill one of its essential purposes or goals, such as when the organization faces a drain on its resources or when the defendant's actions

"have perceptibly impaired" the organization's ability to carry out its mission.  *Id.* at 379.  An association also has "standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Friends of the Earth, Inc.*, 528 U.S. at 181.

RMGO does not provide grounds for its own standing.  *See generally* Docket No. 10; Docket No. 10-1.  Plaintiffs state RMGO "seeks to defend the right of all law-abiding individuals to keep and bear arms" and that it specifically "represents the interests of those who are affected by HB23-1219's unconstitutional burden on the Second Amendment rights of law-abiding citizens who purchase firearms."  Docket No. 10-1 at 1, ¶ 3.  However, such allegations are not enough to confer standing for RMGO in its own right because plaintiffs provide no allegations or evidence that HB23-1219 has made it difficult for RMGO to fulfill any of its essential goals or that HB23-1219 has caused a drain on RMGO's resources.  Accordingly, RMGO fails to show standing in its own right to seek an injunction.

RMGO may also establish standing on behalf of its members.  RMGO, however, fails to satisfy the first requirement for establishing standing, namely, that its members would have standing to sue in their own right.  In *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009), the Court observed that organizational plaintiffs must "identify members who have suffered the requisite harm."  This is accomplished when, through allegations or competent evidence, a plaintiff "name[s] the individuals who were harmed" or shows "*all* the members of the organization are affected by the challenged activity."  *Id.* at 498-

6

99 (citations omitted).  Plaintiffs do not identify any individual member of RMGO who is affected by HB23-1219.  RMGO claims it "has members who reside in Colorado who desire to exercise their Second Amendment right to purchase a firearm," Docket No. 10-1 at 1, ¶ 3, but does not claim that this is true regarding every member of RMGO or even of every Colorado member of RMGO.  *See id.*  Although RMGO could presumably identify individual members,[3] a "federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing."  *Nova Health Sys.*, 416 F.3d at 1154 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990)).  Plaintiffs have not met their burden, *see Colo. Outfitters Ass'n*, 823 F.3d at 543, to show that RMGO has standing in its own right or that it has standing based on its members' standing.  The Court may go no further, *id.* at 543-44, and will deny plaintiffs' motion to the extent it is brought on behalf of RMGO.

### C.  Alicia Garcia

Plaintiffs describe Ms. Garcia's injury as an inability to purchase firearms for lawful purposes without being subjected to an arbitrary, unnecessary, burdensome, and useless delay.  Docket No. 10 at 2-3, ¶ 2.  Plaintiffs do not specifically allege when Ms. Garcia will face this harm.  Plaintiffs state she "is precluded from purchasing a firearm without arbitrary, unnecessary, burdensome[,] and useless delays by HB23-1219," *id.* at 3, but concede HB23-1219 will not take effect until October 1, 2023.  Docket No. 23 at 13.

---

[3] Additionally, for the reasons discussed below, even if RMGO identified a specific member who intends to purchase a firearm, it is not clear that would be enough to establish that individual has standing to seek a pre-enforcement injunction of HB23-1219.

The second and third elements of standing, causation and redressability, are met here.  Ms. Garcia's injury is fairly traceable to the challenged action of defendant[4] and likely to be redressed by a favorable decision, namely, invalidation of HB23-1219.  The issue with Ms. Garcia's standing involves the first element, an injury that is concrete and particularized, and actual or imminent.

Ms. Garcia seeks prospective relief and, as a result, must show a continuing or imminent injury.  *Tandy*, 380 F.3d at 1283.  Because she seeks to enjoin a law pre-enforcement, she can establish an injury sufficient for standing by showing "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder." *Peck v. McCann*, 43 F.4th 1116, 1129 (10th Cir. 2022) (quoting *Ward*, 321 F.3d at 1267).

Ms. Garcia intends to purchase a firearm.  Docket No. 10-2 at 1, ¶ 2.  This conduct is not prohibited by HB23-1219.  HB23-1219 makes it "unlawful for any person who sells a

---

[4] Governor Polis argues that, for purposes of Eleventh Amendment immunity as described in *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013), "he does not 'have a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty,'" but states that he waives his Eleventh Amendment immunity. Docket No. 18 at 3 n.1.  The Court notes that, in determining causation in an analysis of whether a party has standing, "there is a common thread between Article III standing analysis and *Ex parte Young*[, 209 U.S. 123 (1908)] analysis," *Cressman v. Thompson*, 719 F.3d 1139, 1146 n.8 (10th Cir. 2013).  Governor Polis' argument on Eleventh Amendment immunity could be interpreted to attack the causation element of plaintiffs' standing.  The Court, however, finds that Governor Polis "possesses sufficient authority to enforce (and control the enforcement of) the complained-of statute" because "[t]he Colorado Constitution states that the 'supreme executive power of the state shall be vested in the governor, who shall take care that the laws be faithfully executed.'" *Cooke v. Hickenlooper*, No. 13-cv-01300-MSK-MJW, 2013 WL 6384218, at *8 (D. Colo. Nov. 27, 2013) (quoting Colo. Const. Art. IV, § 2), *aff'd in part sub nom, Colo. Outfitters Ass'n*, 823 F.3d 537.

firearm . . . to deliver the firearm to the purchaser" before the expiration of the waiting period.  Docket No. 1-1 at 3.  Ms. Garcia does not intend to sell a firearm.  *See* Docket No. 10-2.  Plaintiffs make no claim that Ms. Garcia could be prosecuted under § 18-12-115.  Because there is no evidence in the record that Ms. Garcia can be prosecuted under HB23-1219, she cannot show a credible threat of prosecution.  *See Faustin v. City & Cnty. of Denver*, 268 F.3d 942, 948 (10th Cir. 2001) (ruling that a prosecutor's determination that plaintiff was not violating the challenged ordinance showed it was not likely she would be charged under the ordinance).  Plaintiffs have failed to meet their burden of demonstrating Alicia Garcia has standing to challenge HB23-1219 pre-enforcement.

Plaintiffs appear to argue more broadly that the Court should consider plaintiffs' claims as they will exist after October 1, 2023, when the law will go into effect, instead of examining the facts as they existed at the time of filing this lawsuit.  *See* Docket No. 10 at 6.  Plaintiffs argue that "forcing people to wait to exercise their right to acquire arms" is an infringement of plaintiffs' rights, but make no claim that anyone currently must wait to acquire arms because of HB23-1219.  *Id.*  The Supreme Court has stated "standing is to be determined as of the commencement of the suit." *Lujan*, 504 U.S. at 570 n.5; *see also Nova Health Sys.*, 416 F.3d at 1154-55.  Plaintiffs state they "have not sought immediate relief through a temporary restraining order because the law is not currently effective," hoping that their motion can be briefed and argued before the law goes into effect.  Docket No. 10 at 1-2.  In response to Governor Polis' argument that plaintiffs face no irreparable harm because the law is not currently in effect, Docket No. 18 at 13-14, plaintiffs state that "[t]he point of the state's argument is [] unclear" because

plaintiffs do not disagree that they "are not at this moment entitled to a preliminary injunction," but rather wanted the Court "to proceed in a more deliberative fashion rather than all at once on October 1." Docket No. 23 at 13-14.  Although the Court appreciates plaintiffs' desire to avoid unnecessarily manufacturing urgency in a motion, plaintiffs' desire to proceed in a deliberative fashion is not a reason to assume subject matter jurisdiction exists when it does not.  As the Supreme Court observed, "those seeking to challenge the constitutionality of state laws are not always able to pick and choose the timing and preferred forum for their arguments.  This Court has never recognized an unqualified right to pre-enforcement review of constitutional claims in federal court." *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 537-38 (2021).

Without a demonstration of a current injury, or an imminent injury based on a credible threat of prosecution, plaintiffs have not shown they have standing to move to enjoin HB23-1219 before it is enforced.

## IV. CONCLUSION

Therefore, it is

**ORDERED** that the Motion for Preliminary Injunction [Docket No. 10] is **DENIED**.

DATED August 7, 2023.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge